BRIDGES *v.* CITY OF BILOXI, MISSISSIPPI

No. 43671          October 4, 1965          178 So. 2d 683

November 15, 1965                    180 So. 2d 154

December 6, 1965                    180 So. 2d 641

*Upton Sisson, Blass & Smith,* Gulfport; *Forrest B. Jackson,* Jackson, for appellant.

*Watkins, Pyle, Edwards & Ludlam,* Jackson; *Charles K. Pringle, Albert Sidney Johnston,* Biloxi, for appellee.

GILLESPIE, J.

The City of Biloxi passed an ordinance defining an area adjacent to the corporate limits which it desired to annex, and describing in general terms the proposed improvements to be made in the annexed territory, the extent of such improvements, and the approximate time within which such improvements would be made. Miss. Code Ann. § 3374-10 (1956). Thereafter the City of Biloxi filed its petition in the Chancery Court of Harrison County, in which such municipality and the annexed territory is located, and prayed for a decree ratifying, approving and confirming the enlargement of the city limits in accordance with said ordinance. Miss. Code Ann. § 3374-11 (1956). After due notice numerous objections were filed, and after a full hearing, the chancellor entered a decree finding that the enlargement of the city limits was reasonable and that reasonable public and municipal services would be rendered in the annexed territory within a reasonable time. The decree approved, ratified and confirmed the proposed enlargement of the corporate limits. Miss. Code Ann. § 3374-13 (1956).

██ █ The City of Biloxi assumed the burden of showing that the proposed enlargement of the city limits was reasonable, in accordance with the statute. Miss. Code Ann. § 3374-13 (1956). Many witnesses were offered by the City of Biloxi and by the objectors. On behalf of the City, experts in the field of city planning were introduced and testified in support of the reasonableness

of the ordinance, the needs of the area proposed to be annexed for sewage, street improvements and maintenance, police protection, garbage disposal, and other services, and the feasibility and reasonableness of the proposed extension. The evidence on behalf of objectors living in the area proposed to be annexed consisted largely of their testimony that they now have adequate services and are content to remain outside of the City of Biloxi.

The City of Biloxi has a long and interesting history. The first permanent white settlement in the Mississippi Valley, it was first settled in 1699 by Pierre le Moyne, Sieur d'Iberville. Since about 1840 the City of Biloxi has been a summer resort and for many years has been a year-around vacation and convention city. It is located on the east end of a peninsula lying between Back Bay of Biloxi and the Mississippi Sound.

The existing corporate limits include an area of 6,405 acres of land and water. Of this amount, forty percent is water, leaving about 3,800 acres of land. Of this amount, 3,410 acres are in the developed area, with a population of 45,000 people. The average population density of the developed area is thirteen persons per acre. There are 325 acres of vacant land within the present city limits, over one-third of which is marsh land or mud flats, leaving 244 acres of vacant land available for future expansion. Included in the present city limits is Keesler Air Force Base, a large military establishment.

The City has grown rapidly, especially during the past ten years, and further population increase is anticipated. The area proposed to be annexed lies immediately to the west of the present city limits and comprises about 4,525 acres of land, approximately 2,000 acres of which is developed with a population of 10,000. The average density of the developed area is about five persons per acre. Approximately 2,525 acres of this area is

vacant land, almost all of which is suitable for development as residential subdivisions. The City of Biloxi has an adequate water system from which it services approximately one-half of the inhabitants of the area proposed to be annexed. The customers of the water system presently living outside the city limits are charged fifty percent more than the customers within the City.

The City of Biloxi cannot expand in any direction except to the west and the area proposed to be annexed is the only area into which the City can expand, being bounded by water in all other directions.

The ordinance described in general terms the proposed improvements to be made in the annexed territory. It proposed that existing streets would be improved, the City would install water lines, sewer disposal service, and street lighting where necessary and feasible; said improvements to be completed within a reasonable time not to exceed five years from the date of the ordinance. The ordinance further stated that the City would furnish immediately the annexed territory with police protection, fire protection, maintenance of existing streets, reduction in water rates to users presently served by the City of Biloxi, the right to exercise the ballot, and the right to use all other municipal facilities furnished citizens of the municipality. The ordinance also provided that garbage removal and pest control service would be furnished within six months from the effective date of the ordinance. The City offered studies by experts to show the financial structure of the City of Biloxi, the cost of municipal services, the expected amount of revenue to be received from taxes in the annexed area, the estimated cost of some of the municipal services in the annexed area, and the approximate cost of capital improvements.

■■ ■ We are of the opinion that the evidence fully justified the chancellor's finding that the City will be financially able to provide the services it proposes to

furnish the residents of the annexed area and that the proposed annexation is feasible and reasonable.

Objectors contend that they will be denied due process and equal protection of the law under the Mississippi and United States Constitutions because their property will be subject to taxation to pay general obligation bonds issued by the City of Biloxi before the annexation ordinance was passed. This contention is not supported by reason or authority. If this were the law it would be practically impossible to annex territory to a municipality. Most municipalities have existing general obligation bonded indebtednesses which are serviced and retired from tax proceeds. The cases cited by objectors in support of this argument are not persuasive. Barnes v. Kansas City, 222 S. W. 2d 756 (Mo. 1949), 10 A. L. R. 553 (1950), holds that property brought into a municipality by annexation is subject to taxation to discharge municipal indebtedness previously incurred and existing at the time of annexation. There is no statute in this state exempting residents of annexed areas from paying taxes for general municipal purposes. They are required to share in the burdens and obligations as well as the benefits common to all citizens of the city.

Objectors next contend that the proposed expansion of the municipality limits is unreasonable, and is not feasible from a financial standpoint. The argument under this subdivision of objectors' brief covers a wide range and is for the most part general in nature. It is contended that the inhabitants of the annexed area have the services proposed to be furnished by the City and that the County under existing laws can provide all of the zoning, police protection and other services which the City could furnish. It is contended that the City of Biloxi will make a profit from the taxes levied on the property within the annexed area which will be spent within the old area of the City. Objectors refer

to the annexation ordinance as being unfair and a "land-grab" for the purpose of taxing the people residing in the annexed area to improve the area within the borders of the present City of Biloxi.

The findings of the chancellor are contrary to these contentions and we are of the opinion that such findings are not manifestly wrong.

■■ ■ In Dodd, et al. v. City of Jackson, 238 Miss. 372, 118 So. 2d 319 (1960), this Court reviewed our cases and analyzed the statutes governing the annexation of additional territory to municipalities, and laid down the general criteria for determining whether an annexation ordinance is reasonable. The following were found to be important factors governing the determination of this question: (1) The City's need for expansion; (2) whether the area sought to be annexed is reasonably within the path of such expansion; (3) the potential health hazard from sewage and waste disposal in the annexed area; and (4) the City's financial ability to make the improvements and furnish municipal services as promised.

■■ ■ As already pointed out the City of Biloxi can expand in only one direction, the area included in the annexation ordinance lying to the west of the present city limits. There is practically no area within the present city limits for development of new business enterprises or residential areas, the only suitable land being approximately 244 acres. The City is experiencing a rapid growth in population. The annexed area is growing rapidly both in commercial enterprises and in residential subdivisions. The chancellor was manifestly correct in finding that the city needs the area for expansion and that the city can expand only into the annexed area.

There is no doubt that within the near future the entire annexed area will be developed into commercial and residential areas. It will in fact be adjacent to and for all practical purposes a part of the City of Biloxi. As stated in Dodd v. City of Jackson, supra,

There is much merit in the theory of overall planning, namely, where it can be reasonably anticipated that a certain area will become a part of a city in a reasonable time, it is better to take it in and develop the same properly and wisely, with particular reference to a uniform system for securing water, the development of streets, and the collection and disposal of sewage and waste, rather than to let the area develop in a harum-scarum manner as each builder or developer may determine. Instances of the lack of uniform planning in laying out streets, water lines, and sewage disposal in the towns and cities can be seen on every hand. (238 Miss. at 396, 118 So. 2d at 330).

This quotation is clearly applicable to the present case.

The evidence showed that about fifty percent of the people in the annexed area receive water from the system operated by the City of Biloxi. As already stated, these residents pay a surcharge of fifty percent for the privilege of using city water. After annexation, they will be charged the same as other residents of the City of Biloxi. The sewage system in the annexed area consists of septic tanks, and the proof established that the use of septic tanks constitutes a health hazard both to the residents of the annexed area and to the residents of the present City of Biloxi. The City of Biloxi proposes to correct this situation by installing an appropriate sewage system.

The City proposed that it would construct the necessary streets and improve existing streets within a reasonable time.

Other facilities proposed to be furnished to the annexed area include fire protection, which will result in a substantial reduction in insurance rates, police protection, street improvements and drainage, garbage collection, library service, establishment of recreational areas and the installation of street lights where needed

and feasible. The proof showed that the City of Biloxi is in sound financial condition, and with the taxes to be levied on the property within the annexed area will be financially able to provide the services proposed to be furnished the annexed area within a reasonable time.

██ ██ Objectors next argue that the expansion ordinance does not define with certainty the territory which it is proposed to include in the corporate limits. This argument is based on Mississippi Code Annotated section 3374-10 (1956), which requires the ordinance to define "with certainty the territory which it is proposed to include in the corporate limits" and "defining the entire boundary as changed." It is contended that while the overall perimeter description is correct, the description is insufficient for the reason that it contains the following: "Less and except a tract of land comprising eighty-seven and one-half (87½) acres, more or less, in Fractional Section 34, Township 7 South, Range 10 West, Harrison County, Mississippi, known as 'Beauvoir'." Objectors contend that the exception is so indefinite as to invalidate the entire description. The City's engineer stated that the map attached to the ordinance does not necessarily contain an accurate description of Beauvoir. But the map does show Beauvoir by name and shows that it is bisected by the Louisville and Nashville Railroad. We are of the opinion that there is no merit in the contention of objectors. ██ ██ This Court has long adhered to the rule that where parcels of real estate are conveyed by well-known designations, such conveyances are valid, although resort to extrinsic evidence may be necessary to show what was accurately included in the general description employed in the conveyance. Jones v. Hickson, 204 Miss. 373, 37 So. 2d 625 (1948). Moreover, Mississippi Code Annotated section 7456 (1952) contains a description of Beauvoir, which is a shrine to the memory of Jefferson Davis, President of the Confederacy, and is administered by

a board of trustees. The entire chapter 1, Title 27, Volume 5A, Mississippi Code Annotated sections 7447 through 7461 (1952), concerns Beauvoir. There can be no question concerning what property was intended to be excluded from the description in the annexation ordinance.

We find no reversible error and the decree of the chancellor is affirmed.

Affirmed.

*Lee, C. J., and Jones, Brady and Inzer, JJ.,* concur.

## ON MOTION OF APPELLANT FOR STAY, AND MOTION OF APPELLEE TO ISSUE MANDATE

The appellant, Dorothy E. Bridges, gave notice of appeal to the Supreme Court of the United States pursuant to Rule 10 of the Revised Rules of the Supreme Court of the United States, and filed a bond in the penal sum of $500 binding the obligors to promptly pay and satisfy all costs and damages that may accrue against the appellants.

Appellant has also filed a motion for a stay of the mandate of this Court and for the approval by this Court of the appeal bond. Appellant contends that the $500 cost bond operates as a supersedeas so as to stay the issuance of the mandate to the chancery court. In other words, appellant contends that under Mississippi Code Annotated section 3374-14 (1956), a $500 cost bond operates as a supersedeas under the authority of Dodd v. City of Jackson, 238 Miss. 372, 118 So. 2d 319 (1960).

Mississippi Code Annotated section 3374-14 (1956) is as follows:

If the municipality or any other interested person who was a party to the proceedings in the chancery court be aggrieved by the decree of the chancellor, then such municipality or other person may prosecute an appeal therefrom within the time and in the manner

and with like effect as is provided above in the case of appeals from the decree of the chancellor with regard to the creation of a municipal corporation.

The statute governing appeals from the decree of the chancellor with regard to the creation of a municipal corporation is Mississippi Code Annotated section 3374-08 (1956), which is as follows:

Any person interested in or aggrieved by the decree of the chancellor, and who was a party to the proceedings in the chancery court, may prosecute an appeal therefrom to the supreme court within ten (10) days from the date of such decree by furnishing an appeal bond in the sum of five hundred dollars ($500.-00) with two good and sufficient sureties, conditioned to pay all costs of the appeal in event the decree is affirmed. Such appeal bond shall be subject to the approval of the chancery clerk and shall operate as a supersedeas. If the decree of the chancellor be affirmed by the supreme court, then such decree shall go into effect after the passage of ten (10) days from the date of the final judgment thereon, and the party or parties prosecuting such appeal and the sureties on their appeal bond shall be adjudged to pay all costs of such appeal.

The two code sections govern appeals to this Court from decrees of the chancery court in proceedings to enlarge, extend, modify and define the corporate limits of a city, and provide that a $500 bond "shall operate as a supersedeas." This statute does not concern appeals from the Supreme Court of Mississippi to the Supreme Court of the United States.

The matter of supersedeas on appeal to the Supreme Court of the United States is governed by Rule 18, Revised Rules of the Supreme Court of the United States. It provides that whenever an appellant entitled thereto desires a stay on appeal, he may present to a judge of the court whose decision is sought to be reviewed a mo-

tion to stay the enforcement of the judgment, with which, if the stay is to act as a supersedeas, shall be tendered a supersedeas bond. No supersedeas bond has been tendered.

The ordinance extending the city limits of Biloxi became effective on May 3, 1962, and this Court rendered its opinion affirming the chancellor's decree approving said ordinance on October 11, 1965. Under the provisions of Mississippi Code Annotated section 3374-13 (1956), the decree of the chancellor in such matters becomes effective, in event an appeal is taken from his decree to this Court, within ten days from the date of the final determination of the appeal by this Court. The suggestion of error filed by appellant was overruled on October 25, 1965. Therefore, this Court has finally determined the appeal and the decree of the chancellor approving the ordinance has become final. Only a supersedeas granted by a Judge of this Court, or by the Court itself, or by a Judge of the Supreme Court of the United States could stay the issuance of the mandate of this Court to the Chancery Court of Harrison County.

We hold that the $500 cost bond and the notice of appeal to the Supreme Court of the United States does not operate as a supersedeas. No supersedeas bond has been tendered and the motion for the stay of mandate is overruled. The motion of the City of Biloxi to direct the clerk to prepare and deliver the mandate of this Court to the Clerk of the Chancery Court of Harrison County, Mississippi, is sustained.

Motion for stay overruled; motion to issue mandate to the trial court sustained.

*Lee, C. J., and Jones, Brady and Inzer, JJ.,* concur.

## ON MOTION TO FIX AMOUNT OF SUPERSEDEAS BOND AND TO STAY JUDGMENT AND MANDATE

Dorothy E. Bridges, the appellant, filed a motion requesting this Court to fix the amount of a supersedeas

bond and to stay the judgment and mandate of this Court pending the outcome of her appeal to the Supreme Court of the United States.

■ ■ It has been nearly four years since the City of Biloxi adopted the ordinance extending the city limits. The chancery court found the ordinance reasonable; this Court affirmed. In our opinion the case does not involve any substantial question under the United States Constitution. Upon consideration of all aspects of the case we hold the motion for a stay of judgment should be overruled.

Appellant's motion to fix amount of supersedeas bond and for stay of judgment overruled.

All Justices concur.