361 So.2d 1372 (1978)
EXTENSION OF the BOUNDARIES OF the CITY OF BILOXI and L.D. Wise et al.
v.
CITY OF BILOXI.
No. 50771.
Supreme Court of Mississippi.
August 9, 1978.
Rehearing Denied September 13, 1978.
*1373 Hengen & Hengen, Louis Hengen, Biloxi, Greaves & Terry, Jerry O. Terry, Gulfport, for appellants.
Page, Mannino & Peresich, Ronald G. Peresich, Vlahos & Caranna, Cono A. Caranna, II, Biloxi, for appellee.
Before ROBERTSON, SUGG and COFER, JJ.
COFER, Justice, for the Court:
The City of Biloxi, Mississippi, adopted an ordinance on November 15, 1976, substantially enlarging its boundaries in the manner provided by statute (Mississippi Code Annotated, Section 21-1-27, et seq., (1972)), and filed petition in the Chancery Court of the Second Judicial District of Harrison County praying ratification, approval and confirmation of its said action. Protests were filed by two groups of objectors, and a lengthy and thorough hearing was had in that court, resulting in entry of decree granting the prayer of the city.
From this decision, the objectors have appealed, assigning these errors in the lower court:
1. The trial court erred in overruling the Motion of res judicata filed in this cause.
2. The court below erred in finding that the Annexation Ordinance 1202 of the City of Biloxi adopted by the City Council, was reasonable, required by public convenience and necessity and that reasonable public and municipal services will be rendered to the annexed area within a reasonable time.
3. The court erred in finding that the area is in fact adjacent to the City of Biloxi. The south boundary line of the area to be annexed was not proven by any creditable evidence whatsoever.

*1374 4. The court erred in finding that Biloxi is in need of area for expansion. There was no proof that the City of Biloxi is in need of any area for expansion.
5. The court erred in finding that it is reasonable to anticipate that the entire area to be annexed will be developed in a reasonable time into residential or commercial areas.
6. The court erred in finding that the financial condition of the City of Biloxi is sound and that the city will be financially able to provide municipal services to the area.
7. The court erred in finding that although the county is furnishing police protection to the area and the area is now provided fire protection by a good volunteer fire department, that upon being annexed to the city the residents will benefit from better fire protection and better police protection.
8. The court found that there was adequate garbage pick-up and street maintenance in the said area but erred in stating that in view of the conditions in other areas the health and welfare of the residents would be better promoted if said area is annexed.
9. The court erred in finding that the proposed annexation is reasonable and said Ordinance 1202 and the annexation provided thereby should be and is approved, ratified and confirmed in its entirety.
As recognized in Giles v. City of Biloxi, 237 Miss. 65, 112 So.2d 815, sugg. of err. overruled, 237 Miss. 65, 113 So.2d 544 (1959); Bridges v. City of Biloxi, 253 Miss. 812, 178 So.2d 683 (1965); and City of Biloxi v. Cawley, 332 So.2d 749 (Miss. 1976); and commonly known, Biloxi is situated on a peninsula, bounded on three sides by water and on the fourth (the west) side by the City of Gulfport.
It is in this suit argued that Biloxi needs territory for expansion, that it can expand only to the north (in the area here involved), and the territory sought to be annexed lies in the path of its growth.
Reserving for further discussion hereinafter, the remainder of the territory proposed for annexation, and by the chancellor included in his decree of annexation, we find ourselves in disagreement with him as to that part of the area lying north of Interstate highway I-10, bordered on its east by Gay Street and bounded by the meanderings of Tchoutacabouffa River between said Gay Street and where I-10 crosses said river. There are now two subdivisions in this territory, Cedar Lake and Pine Crest. Cedar Lake is accessible to the area south of the highway by a road crossing the highway right-of-way, but persons wishing to reach Pine Crest and the territory surrounding it must leave Biloxi as it would be with the annexation, and go to the eastward some distance to find a way to the north side of the highway then turn westerly again before entering Biloxi again and reaching Pine Crest and the territory around it.
In its isolated situation, with the difficulty of passage back and forth between it and the area south of it, we do not consider it reasonable to include it in the annexation and under authority of Mississippi Code Annotated, Section 21-1-33 (1972), we modify the chancellor's decree by removing that area from the south boundary of I-10 northward and it will herein no longer be considered or taken as a part of the area as to which this opinion has application.
Hereinafter the territory being considered will be referred to as the "area."
The chancellor, after hearing the proof and viewing the area involved made findings: that the area is unincorporated territory adjacent to Biloxi, though north of the Bay of Biloxi, a navigable body of water, has for years been accessible from Biloxi by bridges and causeways across the bay; that a new bay bridge (construction of which is now nearing completion) will greatly improve access to the area along Popps Ferry Road (the main road through the area proposed to be annexed); that the area is in Harrison County which has no zoning regulations controlling the area; that police protection is provided it by the Harrison County *1375 Sheriff's office, and fire protection is afforded by a good volunteer fire department (employing one full-time fireman); that as a part of Biloxi, the area residents will benefit from better police and fire protection and will be the recipients of a substantial reduction in insurance rates.
He further found that Biloxi needs area in which to expand; that the area proposed to be annexed is reasonably within the path of its expansion; that the present residential and commercial developments in the area fully establish that Biloxi's expansion will continue (northward) in the direction of Interstate I-10, which passes through the area; and that a large percentage of the employed residents in the area (upward of 51% the testimony shows) are employed in Biloxi, and many of the residents of the area operate businesses in Biloxi.
It was further found by him that the area is in fact adjacent to "and for all practical purposes a part of" Biloxi, and is frequently referred to in the record as "North Biloxi;" that some of the present facilities of Biloxi, including the churches thereof, are used by many of the residents of the area; that there are no schools in the area and 769 of the 1,088 students in the area are now in school in Biloxi, and that part of the area is in the Biloxi Municipal Separate School District, and that the remainder of the student population of the area attends schools provided by the Harrison County School District; that the Biloxi school system has adequate buildings and facilities to take care of the students in the area and will furnish to them necessary transportation as provided by law.
Further, he found that there are vacant rural lands in the area, which he viewed it plausible to anticipate will be developed within a reasonable time into residential or commercial uses, and it is the better course to annex the area before its development with a view to uniform growth, rather than to delay further while the area would populate and make use, haphazardly of the land. Along this line of reasoning, he found that many septic tanks exist in the area, and some parts of it do not have adequate facilities for the collection of sewage and waste, a situation not true of all the developments thus far made; and that, though adequate garbage collection and street maintenance are provided in the area by the county, the health and welfare of the area's residents would be better served by annexation as sought.
He found: the financial condition of Biloxi to be sound and that the city is financially able to provide the services in the area according to the schedule set out in the annexing ordinance, that the proposed municipal and police services offered in the ordinance will be furnished within a reasonable time, and that Biloxi has met the burden of proof that the proposed annexation is reasonable, and he so found, and by decree entered on his opinion, it was approved as reasonable and required by the public convenience and necessity, and the annexation was approved, ratified and confirmed. Except to the extent hereinafter announced, we affirm the chancellor's decision.
It was argued by the objectors from the beginning of this court proceeding that the decision in City of Biloxi v. Cawley, 332 So.2d 749 (Miss. 1976), involving this same area (and another area in addition) is res judicata of this cause. It is not clear in the record that the chancellor made a definite ruling on this plea, the first assigned error above, but denial of the plea is implicit in his adjudication and decree. There is no merit in this assignment, for the question was squarely faced in In Re Extension of the Boundaries of the City of Indianola, 226 Miss. 760, 85 So.2d 212 (1956). Thus faced therewith, this Court determined that there is no restriction or limitation on the right of the city to proceed for annexation "as often as [it] may think that the proposed enlargement or contraction is reasonable and is required by the then public convenience and necessity, all subject to the approval of the chancery court." 226 Miss. at 766, 85 So.2d at 214.
Another consideration will be hereinafter examined in depth, concerning the Cawley case, supra.
*1376 There are certain legal principles that are timely at this point. The burden of proof to establish the reasonableness of the proposed annexation rested upon the petitioner, Biloxi. Dodd v. City of Jackson, 238 Miss. 372, 396, 397, 118 So.2d 319, 330 (1960); In the Matter of the Enlargement of the Municipal Boundaries of the City of Forest, 247 Miss. 340, 342, 153 So.2d 688, 689 (1963).
Reasonableness or not of the proposed annexation is a judicial question, and its decision is a judicial function. Bradley v. City of Jackson, 153 Miss. 136, 119 So. 811 (1928), Jones v. City of Hattiesburg, 207 Miss. 491, 42 So.2d 717 (1949).
There are four criteria involved in an annexation proposal:
1. The city's need for expansion;
2. Whether the area to be annexed is reasonably within the path of such expansion;
3. The potential health hazard from sewage and water disposal; and
4. The city's financial ability to make improvements and furnish municipal services as promised.
Dodd v. City of Jackson, supra; Texas Gas Transmission Corp. v. City of Greenville, 242 So.2d 686 (Miss. 1971).
Review of the chancellor's decision in this type of case, as in other appeals from the trier of fact, is variously stated as a determination as to whether the decision is "... [s]upported by substantial evidence and not manifestly wrong or against the weight of the evidence... ." Lowe v. City of Jackson, 336 So.2d 490, 492-493 (Miss. 1976); the decision on conflicting evidence will not be disturbed unless this Court can say that from all the evidence the chancellor was manifestly wrong, or his decree was clearly against the overwhelming weight of the evidence. City of Picayune v. Quick, 238 Miss. 429, 117 So.2d 718 (1960); and the decision will not be disturbed if supported by substantial evidence. Dodd v. City of Jackson, supra.
It is an understatement to say that conflict appears all through the testimony. The case was hard-fought, well-tried, and the attorneys' briefs are the product of much study and are excellent. The chancellor faced squarely each of the four prescribed criteria in determining reasonableness vel non of Biloxi's annexation effort. On the conflicting testimony, with lines tightly drawn between Biloxi and the objectors, he found evidence supporting the city's position on each of the criteria, and we are to consider the facts in the light most favorable to the chancellor's decree and resolve all conflicts in its favor. Clark v. Magee, 234 Miss. 252, 105 So.2d 753 (1958).
In the Cawley case, supra, this Court said:
We have carefully reviewed the evidence and are unable to say that the decree of the chancellor is manifestly wrong or clearly against the overwhelming weight of the evidence.
and
Since the chancellor reached the conclusion that the proposed annexation was not reasonable, he dismissed the suit, and we are unable to say, after studying the voluminous record, that he was manifestly wrong in his conclusion. We therefore affirm the decree appealed from. (332 So.2d at 751).
Reverting now to a further view of the effect of the Cawley case, we believe that on the municipality's second attempt to annex facts should be presented justifying the second effort. It is argued that promptly upon the affirmance of the Cawley case (May 25, 1976) the governing authority of Biloxi (November 16, 1976) adopted the ordinance now before the Court. The ordinance in the former appeal was adopted on May 18, 1971, and suffered delays before it was reached on its merits in this Court. Thus, five years and eight months elapsed between the adoption of the two ordinances, during which changes took place. We view the present case, as presented in the record, as having in its favor: (1) the near completion of the new high level two-lane bridge across Back Bay between Biloxi and the area attempted to be annexed; (2) *1377 Biloxi's commitment to the West Biloxi area annexed in Bridges v. City of Biloxi, supra, as being finally nearly met; (3) the better tax base of the city from placing the property in the city of a more realistic appraisement; and (4) the growth in the area as shown in the present record. These important factors coupled with the other facts upon which the chancellor based his findings lend strength to the particular findings he made and make out a case for reasonableness of the ordinance and effort.
The omission of D'Iberville, an unincorporated, but heavily populated area, from this annexation effort, while it may be regarded that it too, or perhaps more so, lay in Biloxi's growth path was for Biloxi's initial determination, and recognizing the burdensome problems (not well developed in the record) which would confront Biloxi with municipal responsibility for that area, the exclusion of that area probably was a wise foresight, not considered before or at the commencement of the 1971 effort which included it.
As herein modified, the chancellor's decree of annexation will be affirmed.
AFFIRMED AS MODIFIED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.